UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NO.

_____

MARCELLA DIVIACCHI

      individually and on behalf of similarly situated persons

          Plaintiff

v.

AFFINION GROUP, INC. d/b/a AFFINION BENEFITS GROUP LLC
      d/b/a AFFINION GROUP d/b/a AFFINION GROUP HOLDINGS, INC.;

      individually                                    **COMPLAINT /**

CENTURY BANK AND TRUST COMPANY d/b/a         **JURY
DEMAND**

      CENTURY BANK

      individually and as class representative of similarly situated entities

          Defendants

_____

## PARTIES

1.     Plaintiff Marcella Diviacchi ("Marcella") is a resident of Boston, Suffolk County, MA.

2.     Defendant Century Bank and Trust Company ("Century Bank" or the "Bank") is a Massachusetts Bank with a principal place of business at 400 Mystic Avenue, Medford, Middlesex County, Massachusetts 02155.

3.     Defendant Affinion Group, Inc. ("Affinion") is a foreign corporation in Massachusetts that does business in Massachusetts under at least the above plead various listed tradenames and perhaps more with a principal place of business at 6 High Ridge Park, Stamford, Connecticut 06905.

1

## II. JURISDICTION AND VENUE

4.      The Court has original jurisdiction over this class action pursuant to 28 U.S.C.

§1332(d)(2).  This Action asserts claims for violations of the Electronic Funds Transfer Act

("EFTA"), 15 U.S.C. §1693a; for unjust enrichment; for money had and received; for

conversion; for misrepresentation; for violation of the Massachusetts Consumer Protection Act

that is M.G.L.c. 93A, §9; and for equitable relief consisting of cancellation of a written

instrument, rescission, restitution, and receivership. This Court has jurisdiction over this action

pursuant to 28 U.S.C. §1331 (federal question) and 15 U.S.C. §1693m(g) (EFTA). This Court

has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in the District of Massachusetts under 28 U.S.C. §1391(b) as this is the

judicial district in which the cause of action arose because substantially all, if not all, of the

events and omissions giving rise to this claim occurred here.

## NATURE AND RELATIONSHIP OF THE DEFENDANTS

6.      Affinion Group, Inc., is a privately held international corporation headquartered in

Stamford, CT.  According to the company's website, Affinion Group is "the global leader in the

designing, marketing and servicing of comprehensive customer engagement and loyalty solutions

that enhance and extend the relationship of millions of consumers with many of the largest and

most respected companies in the world" and does this work for "virtually every type of business -

from financial institutions to retailers ..." See Affinion Group, "About Us," *available at*

*<http://www.affiniongroup.com/about-us/>* and Exhibit A.  Affinion Group uses many

tradenames and d/b/a's in conducting its business including but not limited to the above plead

names plus the prior tradename at issue here consisting of Financial Services Association,

("FSA"), and several other tradenames and subsidiary corporations, notably including Trilegiant

Corporation and Webloyalty Holdings, Inc.

7.      An on-line listing of Affinion's clients for its "Membership Programs" (Exhibit A) is 46

pages long and includes hundreds of financial institutions as its client base including the Defendant Century Bank. Exhibit B.

8.     An on-line listing of Affinion's "membership programs" is attached as Exhibit C and includes the "Benefits Package" at issue in this Action.

9.     Affinion's and its subsidiaries' practices have been the subject of considerable litigation. Specifically, Affinion repeatedly has been sued by private parties and by state attorney generals over its practice of enrolling its client's customers in a variety of "rewards programs" through which often unwitting members pay a small monthly fee—usually in the neighborhood of $4-$10 per month—in exchange for a variety of services few of which members ever redeem because few even know that they are signed up for such services.  Affinion has resolved many of these claims against it through large-scale settlements:

- In 2005, Affinion settled with the Attorney General of Florida, promising to refund membership fees to all affected customers in Florida and to pay $400,000.00 in costs. The total value of this settlement was undisclosed.  See In the Matter of Trilegiant Corporation, AG Case # L01-3-1484, *available at* *http://www.myfloridalegal.com/Trilegiant_Settlement.pdf*.

- In 2006, Trilegiant and Chase Bank USA paid a $14.5 million to the Attorneys General of sixteen states, to settle charges of "deceiving deceived consumers into paying for membership programs that offered supposed discounts on things like car and home repair, shopping, and other goods and services."  Under this settlement, Trilegiant/Chase agreed to pay $8.325 million in restitution and $6.1 million to the plaintiff states.  See Mark Huffman, "Chase Bank, Triligent, Settle Negative Option Fraud Charges," Consumer Affairs, 12 Dec. 2006, *available at* *<http://www.consumeraffairs.com/news04/2006/12/trilegiant_chase.html>*. Massachusetts was not a party to this lawsuit.

- In 2009, Affinion reached a settlement in a class-action lawsuit led by Joe Kuefler, a resident of Massachusetts.  See Stipulation of Settlement, In re Webloyalty.com, Inc. Marketing and Sales Practice Litigation (D.Mass. 2009), *available at* *<http://www.wexlerwallace.com/wp-content/uploads/2010/X.pdf>*.  As a result of the

3

settlement, Webloyalty agreed to make several changes to its online services, as well as restitution up to a total of $10 million.

- Later in 2009, the Senate Commerce Committee launched an investigation into Webloyalty's deceptive practices, which resulted in a Senate hearing and the eventual passage of the Restore Online Shoppers' Confidence Act, P.L. 111-345, which passed in December 2009. See Senate Committee on Commerce, Science, and Transportation, "Aggressive Sales Tactics on the Internet and Their Impact on American Consumers," *available at* *<http://www.commerce.senate.gov/public/?a=Files.Serve&File_id=c7b50606-8e74-4cbb-b608-87ab8b949d9a>.*

- In August 2010, Affinion and Trilegiant reached an $8 million settlement with the Attorney General of New York. Of this money, $5 million went to a restitution fund to provide refunds to New York Consumers who were enrolled in Affinion/Trilegiant programs unknowingly, and $3 million was devoted to penalties, costs, and fees. One month later, in September 2010, the Attorney reached an additional settlement with Webloyalty, in which Webloyalty paid $5.2 million in "penalties, costs and fees and would also provide refunds to New York consumers who unknowingly enrolled in or did not authorize billing for Webloyalty discount clubs and programs." See New York State Office of the Attorney General, "Webloyalty and Affinion/Trilegiant Settlements," *available at <http://ag.ny.gov/consumer-frauds/webloyalty and affinion-trilegiant-settlements>.*

10.     Each of these settlements provided some relief to individuals unwittingly tricked into signing up for Affinion Group services. These settlements, however, left many claims—and states—outstanding. They therefore set the stage for a major 2013 settlement between Affinion and 47 states involving its internet marketing services.

11.     In 2013, the Attorneys General of some 46 states, including Massachusetts, and the District of Columbia, reached a $30 million settlement with Affinion, Trilegiant, and Webloyalty. Of the settlement money, approximately $19 million was intended to provide refunds to individuals who unwittingly enrolled in Affinion programs, with $11 million going to

the states for litigation costs, consumer education programs, and other expenses.  See Andre R. Johnson, "Marketing Firm Agrees to $30 Million Settlement," The Wall Street Journal, *available at <http://online.wsj.com/news/articles/SB10001424052702304066404579127841801458608>*.

12.     However there is no mention in these court action of non-Internet-based claims against Affinion that is the nature of the claim here nor any mention in them of FSA ("Financial Services Association") or Century Bank's on-paper practices in any of these settlements nor in other cases brought against Affinion.  However, the practices which these lawsuits challenged bear a striking resemblance to FSA's "membership enrollment" program marketed through Century Bank that is at issue here.  Upon information and belief, the on-paper tactics at issue here are the predecessors to Affinion's on-line unfair and deceptive marketing practices that use the same scam tactics.

## INDIVIDUAL CLAIM

13.     The basis of this claim are an entitled "Benefits Package" and "Membership Enrollment" and "Membership Agreement" (hereinafter "Package") that constitute an unconscionable contract of adhesion that in perpetuity grants the Defendants the right to make an electronic debit from Marcella's Century checking account in the amount of $4.00 that has been taken every month for a time that appears to go as far back as 19 years and that has been taken without any proper or legal authority from her, without notice to her, and without any proper authorization.  In fact such contract was achieved through deceptive acts that are Affinion's business model for profit that has been ongoing for years and that succeeds with the aiding and abetting of its clients such as the Defendant Century Bank.

14.     Ms. Diviacchi was born on 9 October 1931. She is an ethnic Italian who emigrated to this country in the Summer of 1963 after escaping from Yugoslavia in 1962 with her family and encamped as a refugee with her family in Italy as part of the post World War II United Nations 1947-48 Treaty of Paris and the 1954 London Memorandum refugee program.  She is literate in her native language of Italian at the grade school level, but is not literate in English.  She barely speaks English and cannot read or write English.

15.     As part of her retirement, she came to Boston in the mid-Summer of 1995 to reside at the

subsidized elderly housing at McNamara House on Everett Street in Brighton, Massachusetts, 02135 that is just down the street from the Century Bank at the corner of Everett Street and Western Avenue in the Allston part of Boston, MA.  At some point in late June, early July 1995, she came to that Century Bank branch at 300 Western Avenue, Allston, MA. 02135 ("Century Bank"). Because of its close location, she went there to open a checking account at some point in the Summer of 1995.

16.     On or about 2 December 2013, Marcella brought to the undersigned counsel a copy of the attached letter from Affinion Group and a copy of her associated checking account statement showing that there has been a $4.00 deduction taken from her checking account for something called a "Benefits Package" about which she knows nothing and of which she has no records nor to her knowledge has she ever authorized nor in any way allowed.  Exhibit D. Through the undersigned counsel's contact with Century Bank's Customer Service Center on or about 2 December, Marcella learned for the first time that this $4.00 charge for a Benefits Package is something that goes back ten years to something Century Bank called an insurance program by a different name.  Century's agent further stated that there is no way to locate the initial authorization nor to locate  any records regarding this $4.00 debit and that the only available action was to have Marcella pay approximately $28.00 to have the $4.00 monthly credit removed for a period of approximately six months, after which point it may start again and a new stop payment and fee would have to be paid and issued.

17.     Marcella never knowingly authorized this $4.00 electronic debit from her account in any way and has no records of it ever being authorized nor knows what it is about nor what it is. She did not want it to continue.

18.     As a result of an initial *Chapter 93A* demand, Century Bank produced records that establish the following facts.

19.     At Century Bank during the opening of her account, Marcella was asked for the usual account opening information such a name, address, SSN, and proper identification. She subsequently provided the information and was then asked to sign what were represented to be the usual "signature cards" confirming the information and providing a signature sample for the authorized signatory of the checking account. Exhibit E. However, unbeknownst to her, one of

these "signature cards" was not actually a signature card but according to the recently produced records was a "Membership Enrollment" that simply by signing, without any other affirmative act by nor by any further notice, allowed Century Bank to enroll her in an insurance program issued by Financial Services Association ("FSA") that later became known and is presently known as Affinion Group Holdings, Inc. d/b/a Affinion Group d/b/a Affinion Group Benefits Group d/b/a Affinion Benefits Group LLC.  Exhibit E.

20.     According to this Membership Enrollment form, just by her signature --- a signature obtained by the misrepresentation that she needed to sign these signature cards in order to open her account and allow for deposits and withdrawal from such account --- allowed Century Bank and FSA to unilaterally without further notice or assent to bind her to an entitled "PLAN 1 insurance coverage will be in effect if member fails to select plan below." Exhibit E. Furthermore, this unilateral binding into an insurance contract is of undetermined length and goes on for an indefinite period of time; forever; apparently this form intends to be a contract binding in perpetuity. Exhibit E.

21.     She never again received any notice of what this "Plan 1" was, how this insurance plan was to be paid for, the amount of any applicable membership dues, nor of any charges for this service; and then at some point Century Bank began deducting at least $4.00 for FSA each month from her checking account that was disguised in the monthly statement under "miscellaneous debits" as a "benefits package" which she understood to be, understandably and foreseeably,  the monthly cost for maintaining the checking account. Exhibit F. Upon information and belief, Century Bank was receiving and did receive a commission for unilaterally signing her up for the Package.

22.     At various times since those documents were produced Defendants have made inconsistent claims to the undersigned Counsel as to what "benefits" were provided. Century claimed that the benefits were:

- Free, Accidental Death Insurance of $10,000 which increases to $150,000 if traveling via a licensed Common Carrier

- Free, Credit Card Protection

- Free, Auto Trip Routing

- Free, Medical Emergency Data Card
- Free, eye wear discounts
- Free, pharmacy discounts through the Rx Advantage

Affinion however claimed that the benefits were:

Hotel Savings Network

Grocery Coupons

Payment Card Protection

Group Insurance

Key Ring

Luggage Protection

Document & Personal Property Registration

Car Rental Discounts

Magazine Subscription

Savers Club

Bonus Travel

23.   It is apparent that the Defendants themselves have no clue as to the "benefits" of the Package since it was never intended nor did they intend to provide any benefits but only used the Package as a scheme to collect electronic debits of Marcella without her knowing about the debit so that she would never expect to collect any benefits from a Package of which she knew nothing. Even the Defendants do not know what benefits they were pretending to provide to the Plaintiff. Plaintiff had no knowledge of the existence of any of these supposed "benefits", never received any notice of them, and even if such were ever mailed to her they would have appeared as common marketing mailings that were summarily thrown away by her because she could not afford any of them and had no knowledge that she was paying $4 a month for any of the unknown benefits until 19 years later when she received the attached "Membership Renewal Notice", Exhibit D, indicating that the $4.00 monthly membership fee was in fact an insurance package that was being renewed automatically without any notice to her and without her assent.

24.   Through her attorney, she repeatedly called the attached phone number of Exhibit D to try to cancel the program but it always resulted in a busy signal. Through her attorney, she filed a

notice on the stated webpage of www.membercontractus.com/pkg of <u>Exhibit E</u> to cancel her membership but when it finally went through she never received any confirmation and the request seems to have disappeared.

25.     Through her attorney, she immediately acted to stop this "renewal" by demanding that the subject monthly electronic debit of $4 from her checking account be stopped. Century initially demanded upon information and belief an approximate $24 payment to stop the $4 debit for six months. Eventually, it agreed to stop the payment but could not and still does not guarantee that Affinion may not renew the monthly debit and has refused to reimburse any of the monthly debits of the last 19 years. Century has refused to inform any of its customers who like Marcella have been similarly defrauded of money by its use of similar Affinion marketing scams and thus upon information and belief is continuing such fraudulent monthly debits and is continuing to profit from them through its other banking clients.

26.     Affinion as a result of a subsequent M.G.L.c. 93A demand letter sent on her behalf and on behalf of the class did reimburse Marcella $382 which is approximately 40% of the 19 years of charges but refused to acknowledge error maintaining "the fees were validly incurred" thus apparently maintains the right to enforce the attached contract and to recommence the debit as Century said they may. Just as with Century, Affinion has refused any remedies to other persons similarly situated such as stopping the monthly debits and has refused to informing Century's and Affinion's other customers and the customers of Affinion's other clients that such fraudulent monthly debits are occurring.


## CLASS ALLEGATIONS


27.     Plaintiff incorporates herein by reference ¶¶ *supra* and the attached <u>Exhibits</u>.

28.     Plaintiff brings this consumer class action on behalf of herself and a class of consumers who were charged any electronic bank fees as a result of becoming subscribed to Defendant's Package or any substantively similar Affinion membership programs ("membership programs") including but not limited to those listed in <u>Exhibit C</u> through an unconscionable contract that is

or that is substantively similar to the attached Exhibit E.

29.     Defendants at all times mentioned herein have advertised and transacted business in the Commonwealth of Massachusetts.  The violations of law described herein have been and are now being committed in the Commonwealth of Massachusetts.  Unless enjoined and restrained by an order of the Court, Defendants will continue to engage in the unlawful acts and practices set forth in this Complaint.

30.     Whenever reference is made in this Complaint to any act of Defendants, that allegation shall mean that each Defendant acted individually or jointly with the other Defendants.

31.     At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, ratified the acts, or permitted others to commit the acts alleged in this Complaint.  Additionally, some or all of the Defendants acted as the agent of the other Defendant, and all of the Defendants acted within the scope of their agency if acting as an agent of another.

32.     Defendants have together created and carried out a marketing scheme that violates the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §1693a;  M.G.L. c. 93A and regulations promulgated thereunder including, but without limitation, to 960 CMR 3.01, *et seq.* and 960 CMR 6.1, *et seq;* and that constitute common law torts and that are inequitable in nature allowing for equitable relief. Through this scheme, Defendants have misled consumers into becoming members of various membership programs Defendants sell without the consumers' knowledge or consent.  These membership programs include, but are not limited to, the "Benefits Package" and any similar programs in the attached Exhibit C. Consumers are charged a monthly fee for these packages through an electronic debit from their banking checking account.

33.     These programs appear to come from Affinion's marketing partner, in this case Century Bank, but in reality it comes from Affinion. When a consumer accepts and signs the deceptively entitled, small-print forms that appear to be simply a typical bank account opening signature card, the result is that the bank customer becomes a member of one of Affinion's membership programs. Such bank customers often do not realize the consequences of the forms, because there is only an inconspicuous statement in small print that states that accepting the offer authorizes Defendants to debit the bank customer's checking account.

34.     As stated in Exhibit E's small print, consumers were not and are not required to affirmatively select any specific program or billing option nor to take any other meaningful affirmative step that would help to assure that they knowingly were joining one of Defendants' membership programs and authorizing Defendants to bill them for the membership.  Rather, simply by signing, consumers unknowingly were billed for and enrolled in one of Defendants' fee-based membership programs using billing information passed from Defendants' marketing partners to Defendants.

35.     Furthermore, Defendants' solicitations did not clearly and conspicuously disclose that consumers would not receive automatically whatever the "Package" is suppose to give them but that instead they are required to take additional steps to receive the alleged benefits resulting in many consumers such as Marcella never receiving the supposed benefits. Steps that they could not take because they had no idea that they were even enrolled in any such Package.

36.     Upon information and belief, given the constant busy signals at the Defendants listed toll-free numbers of Exhibit D, when consumers discover the unexpected charges on their bank account, they typically attempt to contact Defendants but as with Marcella are unable to do so. Therefore many consumers are unable to even contact Defendants to cancel.

37.     Though the "Package" purportedly provides benefits that even the Defendants cannot agree upon, but, upon information and belief, such packages provide virtually no benefit at all, either because the purported "benefits" do not exist or because the unwitting "subscribers" such as Marcella never attempt to access them.  The uniform business practice by which Defendants sell the "Package" and similar programs constitute theft, pure and simple.  Worse, Defendants' scam compromises the confidential bank account information of unsuspecting bank customers.

38.     Because the amount charged (*i.e.*, between $4) is so small and appears to be simply a monthly bill for the checking services, many months often go by with these charges going unnoticed.

39.     On information and belief, Century is paid a percentage of each monthly charge for Affinion's Packages.

40.     The intentional and knowing nature of the Defendants' acts is established by their failure to take the simple step of having their customer affirmatively check off whether they want Plan 1

or Plan 2 on the attached <u>Exhibit E</u>. Instead of using small print stating "PLAN 1 insurance coverage will be in effect if member fails to select plan below," why do not Defendants eliminate any potential claim of illegal business practices and any chance of liability by simply requiring all consumers to affirmatively renew their "membership" at regular intervals instead of putting in an evergreen provision that essentially makes the membership run in perpetuity. One answer is inevitable . . . . because their business model for making a profit is based on deception, if they eliminate the deception, Affinion would be out of business.

41.    Defendants' marketing activities are designed to, and do, exploit banking consumers well ingrained habit of signing signature cards at the opening of any checking account.  In short, Defendants exploit consumer behaviors for their own unfair and deceptive ends.

42.    Because of the automatic billing structure employed by Defendants and the hiding of such charges on the monthly checking statements, customers often do not realize for months or years that they are being charged for unauthorized membership programs.

43.     Plaintiffs bring this action as a class action pursuant to M.G.L.c. 93A, §9 and the Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of themselves and all others similarly situated as members of the following class (collectively, the "Class"):

(a)    All persons who were electronically debited fees from a bank checking account by Defendants for a "Benefits Package" or one of the other Affinion membership programs that are substantively similar to this particular program through the use of a printed "Membership Agreement" or "Membership Enrollment" that is the same or substantively similar to the attached <u>Exhibit E</u>.

44. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

45. ***Numerosity.***  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff upon information and belief alleges that the proposed Class contains thousands of members.  The precise number of Class members is unknown to Plaintiffs.  The true number of Class members are known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

46. ***Existence and Predominance of Common Questions of Law and Fact.***  Common questions

of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendants developed and implemented a scheme to intentionally create unauthorized membership programs and to charge consumers for such accounts through electronic debits from their checking accounts;

(b)     Whether Defendants conspired with each other to intentionally create unauthorized membership programs and to charge consumers and entities for such programs;

( c)     Whether pursuant to the policies and practices described above, Defendants made "preauthorized electronic fund transfers" from the checking accounts of class members without first obtaining the members' knowing written authorization;

(d)     Whether Defendants violated 15 U.S.C. §1693e with respect to the EFTA members;

(e)     Whether Defendants committed conversion;

(f)     Whether the conduct of Defendants constitutes unlawful, unfair, or fraudulent business practices in violation of M.G.L.c. 93A, §9;

(g)     Whether the Defendant Bank and other financial institutions aided and abetted Affinion's wrongful acts;

(h)     Whether Defendants have been unjustly enriched at the expense of Plaintiff and the Class;

(I)     Whether Defendants are liable to Plaintiffs and the Class for money had and received;

(j)     Whether Plaintiffs and members of the Class have sustained damages as a result of Defendants' conduct, and, if so, what is the appropriate measure of damages;

(k)     Whether Plaintiffs and members of the Class are entitled to declaratory and/or injunctive relief to enjoin the unlawful conduct alleged herein; and

(l)     Whether Plaintiffs and members of the Class are entitled to punitive damages, and, if so, in what amount.

47.     ***Typicality.*** Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff and each member of the Class were charged without his or her prior expressed

request or consent for a Membership Program account.

48.     ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

49.     ***Superiority.*** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

50.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

( c)     Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

51.     In the alternative, the Class may also be certified pursuant to the EFTA, *15 USC*

*§1693g(a) et seq;* Regulation E, *12 CFR §205.6 et seq.*

52.     The claims asserted herein are applicable to all individuals and entities throughout the United States who became enrolled in one of Defendants' "Benefits Package" or similar "Membership Programs" using the same or substantively similar form of <u>Exhibit E</u>.

53.     Adequate notice can be given to Class members directly using information maintained in Defendants' records or through notice by publication.

54.     Damages may be calculated from the sales or debit information maintained in Defendants' records, so that the cost of administering a recovery for the Class can be minimized. The amount of damages is known with precision from Defendants' records.

55.     Defendants are equitably and legally estopped from claiming any statute of limitations claim by their fraudulent acts that go back at least 19 years.

## CAUSES OF ACTION

**COUNT I**

**(Violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693e)**

56.     Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.  Plaintiff asserts this claim against Defendants on behalf of herself and the Class.

57.     Defendants have initiated electronic transfers of funds for unauthorized membership program accounts from the bank account of Plaintiff and Class members on a recurring basis, at substantially regular intervals, without first obtaining knowing, written authorization from them.

58.     Therefore, Defendants have violated 15 U.S.C. §1696e.

59.     Plaintiff and members of the Class have suffered damages by reason of Defendants' violations of 15 U.S.C. §1693e.  Accordingly, under 15 U.S.C. §1693m, Plaintiff seeks actual damages, punitive damages, statutory damages, costs of suit, attorneys' fees, and an injunction against further violations with notice to all class members.

### COUNT II

**(Conversion)**
**(Against All Defendants)**

60.     Plaintiff hereby realleges and incorporates by reference all paragraphs previously

alleged herein. Plaintiff asserts this claim against Defendants on behalf of herself and the Class.

61.     Defendants (1) in the course of its business; (2) affirmatively supplied/provided false information to Plaintiff or failed to disclose information it was required to disclose; (3) upon which the Plaintiff justifiably relied to her financial detriment; and (4) the Defendant not only failed to exercise reasonable care or competence in obtaining or communicating the information but intentionally and knowingly, explicitly or implicitly made false representations and statements of existing facts by being silent and omitting to disclose to Plaintiff and the Class : (a) that by simply signing the attached Exhibits or substantively similar forms designed by Defendants to appear as standard signature cards or associated with such cards while opening an account with Defendants they would automatically charge Plaintiff and the Class a monthly fee in perpetuity; (b) that Defendants Membership Programs provide no benefit to Plaintiff and the Class.

62.     Defendants converted money by false pretenses when they deceived Plaintiff. The slight-of-hand scheme by Defendants is fraudulent.

63.     The false statements/omissions of material fact by Defendants were not made innocently or inadvertently but were instead made with the intent to obtain money from Plaintiff and the Class by false pretenses.

64.     Defendants' silence and omissions as to the material facts outlined above were material insofar as such silence and omissions caused the Class to, without their knowledge, enable Defendants to defraud them out of up to $4 per month.

65.     Defendants knew that their actions would result in the conversion of money from Plaintiff and the Class.

66.     All of the Defendants intended to and did defraud Plaintiff and the Class as evidenced by Defendants' conduct alleged in this complaint.

67.     Plaintiffs and the Class were induced by Defendants' fraudulent acts and were injured thereby.

68.     Defendants obtained money from Plaintiff and the Class as a direct and proximate cause of Defendants' fraud by false pretenses, and Plaintiff and the Class have not been compensated fully for the payment of such money.

## COUNT III

### Fraud

69.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

70.     Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

71.     Defendants (1) in the course of their business; (2) failed to disclose information it was required to disclose; (3) upon which the Plaintiff justifiably relied to her financial detriment; and (4) the Defendants not only failed to exercise reasonable care or competence in obtaining or communicating the information but intentionally and knowingly, explicitly or implicitly made false representations and statements of existing facts by being silent and omitting to disclose to Plaintiff and the Class :  (a) that by simply signing the attached Exhibits or substantively similar forms designed by Defendants to appear as standard signature cards while opening an account with Defendants they would automatically charge Plaintiff and the Class a monthly fee in perpetuity; (b) that Defendant's Membership Programs provide no benefit to Plaintiff and the Class.

72.     The false statements/omissions of material fact by Defendants were not made innocently or inadvertently, but were instead made with the intent to obtain money from Plaintiff and the Class by false pretenses.

73.     Defendants' silence and omissions as to the material facts outlined above were material insofar as such silence and omissions caused the Class to, without their knowledge, enable Defendants to defraud them out of up to or more than $4 per month.

74.     Plaintiffs and the Class were induced by Defendants' fraudulent acts and were injured thereby.

75.     Defendants obtained money from Plaintiff and the Class as a direct and proximate cause of Defendants' fraud by false pretenses, and Plaintiff and the Class have not been compensated fully for the payment of such money.

## COUNT IV

### (Unjust Enrichment)
### (Against All Defendants)

76. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.  Plaintiff asserts this claim against Defendants on behalf of herself and the Class.

77. Defendants have accessed and received payments from Plaintiffs' and the Class members' bank accounts without their legal consent and thus knowingly received a benefit from Plaintiffs and the Class.

78. Such fees, compensation and/or profits constitute unjust enrichment for Defendants and must be disgorged.

79. Plaintiffs and members of the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants plus interest thereon.

80. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and members of the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement from Defendants of the benefits conferred by Plaintiffs and the Class.

90. Plaintiffs and the Class may have no adequate remedy at law.

## COUNT V

### (Money Had & Received)
### (Against All Defendants)

91. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.  Plaintiff asserts this claim against Defendants on behalf of herself and the Class.

92. As a result of the conduct alleged herein, Defendants improperly received monies from Plaintiffs and the Class they were not legally entitled to receive. An action for money had and received lies to recover money which should not in justice be retained by the Defendants and which in equity and good conscience should be paid to Plaintiff.

93. Plaintiffs and members of the Class have a claim for improperly paid fees for the Membership Programs.

94. Equity and good conscience require that Defendants ought to pay over such additional monies, described above, to Plaintiff and the Class.

95. As a direct and proximate result of Defendants' inappropriate practices, Plaintiff and

members of the Class have suffered injury and are entitled to reimbursement, restitution, and disgorgement in the amount necessary to restore them to the position they would have been in if Defendants had not improperly collected and retained the aforementioned fees.

## COUNT VI - AIDING AND ABETTING

### (Against Defendant Century Bank)

96. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against Defendants on behalf of herself and the Class.

97.     Defendant Century Bank's acts, individually and as a class representative of other financial institution clients of the Defendant Affinion, constitute an aiding and abetting of Afinion's breaches of know legal duties to the Plaintiff.

## COUNT VII

### (Violation of the Massachusetts Consumer Protection Act, *M.G.L.c. 93A, §9*)

98.     Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.  Plaintiff asserts this claim against Defendants on behalf of herself and the Class.

99.     Beginning at an exact date presently unknown to Plaintiff, and continuing to the present, Defendants have with the intent to induce members of the public in the Commonwealth of Massachusetts to purchase memberships in their various "membership programs", made, disseminated, or caused to be made or disseminated before the public in the Commonwealth of Massachusetts the following untrue or misleading statements which they knew, or by the exercise of reasonable care should have known, were untrue or misleading at the time the statements were made or disseminated, in violation of M.G.L. c. 93A § 2 and regulations promulgated thereunder including, but without limitation, 960 CMR 3.01, et seq. and 960 CMR 6.01, et seq..  Defendants' solicitations have:

    a.    Failed to clearly and conspicuously disclose the actual terms and conditions that applied to their offers and failed to inadequately disclose the material terms associated with becoming a member of their membership programs;

    b.    Used misleading language when offering incentives and trial offers;

c.      Offered nominal rewards to consumers in the form "Benefits Packages" without adequately disclosing that accepting these offers would automatically enroll a consumer in a membership program and that the fee for such program will automatically be charged to the consumer's bank account in perpetuity unless the consumer affirmatively takes steps to cancel the membership;

d.      Without adequately disclosing that automatic renewal billing would apply if a consumer joined Defendants' membership programs, Defendants continued to bill members on an automatic renewal basis until consumers cancelled membership in the membership program;

e.      Used checking account signature cards to sign up consumers in membership programs the consumer does not know they are joining;

f.      Obtained inadequate consent from consumers prior to and during enrollment in Defendants' membership programs;

j.      Used deceptive billing practices;

k.      Failed to send post-enrollment communications to consumers who enrolled in Defendants' membership program which properly disclose the material terms of Defendants' membership programs;

l.      Failed to send communications to consumers, regardless of the method of enrollment in Defendants' membership program, which properly disclose the benefits associated with and changes in terms for Defendants' membership programs;

m.      Automatically renewed memberships at the expiration of each periodic (whether annual or monthly) membership period and charging consumers' accounts for the renewals when the renewals were not actually ordered or requested by the members and without the advance consent of the consumers;

n.      Failed to use adequate notices on  billing statements sent to consumers regardless of the method of enrollment in Defendants' membership program;

100.    Unless enjoined and restrained by order of the Court, Defendants will continue to engage in such violations.

101.    Defendants' acts constitute unfair and deceptive acts in violation of *M.G.L.c. 93A, §§ 2,*

9. Defendants have failed to make a reasonable settlement offer in response to demand for such made pursuant to *§ 9* of *Chapter 93A* by the Plaintiff on behalf of the Class.

## COUNT VIII   - EQUITABLE RELIEF

102.     Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.  Plaintiff asserts this claim against Defendants on behalf of herself and the Class.

103.    Plaintiff on behalf of herself and the Class ask for the following for equitable relief:

   a. A declaratory judgment that the attached Exhibit E and all substantively similar contracts are an unconscionable contract of adhesion that was and is unenforceable;

   b. Cancellation of the attached Exhibit E and all substantively similar contracts;

   c. Rescission of Exhibit E and all substantively similar contracts;

   d. Restitution;

104.    An injunction stopping Defendants from collecting an monthly fees on the "membership programs" at issue.

105.    The facts establish that Affinion has a continuing and operating business model of using marketing scams and deception fo consumers from which it has profited for at least 19 years that shows no sign of stopping despite private action and government attempts to stop such business model. It continues to profit from this model and apparently considers making substantial payments of civil judgments and settlements simply a cost of doing business. Therefore Equity allows and demands that this Court appoint a receivership of Affinion to examine and to stop this business model.

**PRAYER FOR RELIEF**

   WHEREFORE, the Plaintiff requests on her behalf and on behalf of the Class that this Court award:

(1)    class certification;

(2)    damages together with statutory interest and prejudgment interest consisting of expectancy, compensatory, incidental, and consequential damages as determined by the Court;

(3)      monetary relief consisting of restitution and disgorgement of profits;

(4)      statutory damages;

(4)      attorneys' fees and costs;

(5)      double or treble or other punitive damages;

(6)      equitable relief including but not limited to recision, restitution, cancellation,

         declaratory, disgorgement of profits, and injunctive;

(7)      granting such other and further relief as the court deems just and proper;

and

1.      Order Defendants, each of them, and their successors, agents, representatives,

        employees, and all persons who act in concert with any of them to be permanently

        enjoined from engaging in the unfair or deceptive conduct alleged herein;

2.      Enter such orders or judgments as may be necessary to restore to any person in

        interest any money or property which may have been acquired by means of unfair

        or deceptive acts and practices;

3.      Order Defendants to pay civil penalties for each violation of statutory law;

4.      Order Defendants to pay reasonable attorney's fees and costs;

5.      Order such other and further relief as the Court may deem just and proper

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES.**

Plaintiff by her attorney,

/s/ Valeriano Diviacchi
BBO# 555940
Diviacchi Law Office
111 Beach Street   #1A
Boston, MA 02111-2532
617-542-3175
Fax 617-542-3110
Val@diviacchi.com    Date: